**GREEN, Admr. v SULLIVAN et**

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3239. Decided July 26, 1940.

McFayden, Swisher & Warden, Columbus, for plaintiff-appellant.

Willard C. Walker, Chillicothe, for defendants-appellees.

**OPINION**

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment of the Probate Court in favor of defendants-appellees.

We learn from the briefs and from notations in the transcripts of docket and journal entries that plaintiff, as administrator, filed his application in the Probate Court to sell the personal estate of decedent to pay debts. The petition is not made a part of the transcript and we, therefore, do not have the specific averments thereof. It is stated that defendants filed an answer and cross-petition setting up that they were the owners and holders of a chattel mortgage given by plaintiff's decedent in her lifetime on certain of her personal property which it was claimed was duly and legally filed with the County Recorder of Ross County, Ohio. This answer and cross-petition is not among the files.

The bill of exceptions recites that it is agreed that on the 27th day of May, 1936, the chattel mortgage executed by plaintiff's decedent to the Southern Ohio Loan Company, Chillicothe, Ohio, in the sum of Five Hundred Dollars ($500.00) covering certain chattels described in the chattel mortgage be introduced into evidence. It is further agreed that the mortgage was filed with the County Recorder, Ross County, Ohio, on May 29, 1936. It further appears that an answer to the cross-petition was filed. It further appears that in the answer and cross-petition it was the claim of defendants that at the time of the execution of the chattel mortgage decedent was a resident of Ross County, Ohio, which averment the answer of plaintiff denied and alleged that she was a resident of Franklin County, Ohio, at all times. Thus, when the parties went to trial the sole issue was whether plaintiff's decedent at the time of the execution of the chattel mortgage was a resident of Ross County, Ohio, where the mortgage was filed.

The bill of exceptions discloses that the respective parties offered testimony directed to the sole issue. During the progress of the case it developed that plaintiff's decedent signed an application for loan at the time the chattel mortgage was made, in which it is stated that her address is Chillicothe, R. No. 5.

At the close of the trial the Court found that at the time of the execution of the chattel mortgage plaintiff's decedent was not a resident of Ross County but was a resident of Franklin County, that her estate was solvent, further that the pleadings should be amended to conform to the evidence, and that the cause should proceed as one in equity and not at law and thereupon held that plaintiff's decedent had worked either actual or constructive fraud upon the defendants by misrepresenting her place of residence and that because thereof they should be decreed to be holders of an equitable first lien upon the property covered by

the mortgage. The final entry conforms to the Court's finding and although it does not specifically appear that the administrator was ordered to sell the property upon which the lien was decreed it may be assumed that this was done as the order further provides that the proceeds of the sale of the chattel property, excepting certain articles which had been theretofore sold, should be applied to the mortgage claim of defendants. This is the order of the Court to which the appeal is directed. Although general exceptions were noted to the order, there is no error assigned to the action of the Court in permitting the amendment to the answer and cross-petition nor to the finding of fraud against plaintiff's decedent.

The one error assigned is that the Court erred in refusing to find and adjudge that the defendants did not have a valid and subsisting lien on the property described in the chattel mortgage by reason of their failure to file their chattel mortgage in Franklin County, the residence of plaintiff's decedent at the time the mortgage was given.

We then consider the narrow question, did the Court err in decreeing the chattel mortgage of defendants to be a first and best equitable lien on the personal property which was in the possession of plaintiff's decedent at her death. If so, must the judgment be reversed?

The germane sections of the statute are §§8560 and 8561 GC.

**Sec. 8560 GC:**

"A mortgage, * * *, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, * * * unless the mortgage, or true copy thereof, be forthwith deposited as directed in the next succeeding section."

**Sec. 8561 GC:**

"A chattel mortgage must be deposited with the County Recorder of the County where the mortgagor resides at the execution thereof if a resident of the State, * * *."

It is the claim of appellant that the language of §8560 GC, is clear and unambiguous and that by its terms the chattel mortgage under consideration is absolutely void as against the creditors of the mortgagor and that in the action to sell the personal property of the decedent the administrator is representing her creditors.

It is the claim of the appellees that inasmuch as plaintiff's decedent practiced fraud upon the mortgagor it was within the province of the Court to hold that the mortgage constituted an equitable lien against the property therein described which was the first and best lien. This was the view of the trial judge and further that as the estate was solvent the general creditors would not be adversely affected by decreeing the mortgage to be an equitable lien.

If the mortgagor had lived there would have been no question as to the validity and effect of the mortgage as between her and the mortgagees. **Wilson v Leslie, 20 O. 161.** Likewise, upon her death in so far as the administrator is her personal representative only, he is estopped to deny the validity and binding effect of the instrument as a chattel mortgage. The difficulty arises in determining the rights of the creditors of plaintiff's decedent and to what extent the administrator represents them and can set forth their interests in the proceedings under review.

As before stated, the trial judge found that the estate of Luigarde Schmidt was solvent. There is not one word in the bill of exceptions on this subject nor is there anything before the Court among the other papers touching the matter. The brief of appellant asserts that the estate is insolvent. Whether or not there is anything to support this position or anything so averred in the petition, we do not know. The trial judge in his second opinion which is before us relied upon the inventory which it is asserted shows a valuation of approximately $50,000.00 and the schedule of debts the sum of $28,886.00. The

trial judge could take judicial notice of the records in the case. We have the presumptions that the conclusion of the Court is correct and that the estate is solvent which we indulge to support the finding.

It has frequently been held that during the lifetime of a mortgagor a general creditor can not assert the invalidity of an unrecorded or improperly recorded chattel mortgage. It is only after the creditor's claim has attained to the dignity of a lien that he may assert the invalidity of such a chattel mortgage. After the death of the mortgagor the right of the administrator to challenge the validity of the mortgage is variously considered and determined by the Courts. The matter is thoroughly discussed in an annotation to Leffek v Luedeman, 91 A. L. R., 299. Therein at page 300, several theories underlying the authorities are discussed and the epitomization is so succinct that we quote it at length:

"Ordinarily, an unrecorded mortgage or conveyance is valid as against the mortgagor * * *; and, as an * * * administrator represents a deceased, as a general rule he stands in no better position than the deceased himself, where, the estate being solvent, the interests of creditors are not involved, and can not, therefore, attack the validity of the mortgage * * * as being unrecorded. Where, however, the estate is insolvent and the assets insufficient to pay all the creditors, he represents not only the deceased but also the creditors; and the question then arises whether he can take advantage of the failure of the mortgagor properly to record the mortgage. Analogous to this question is the question whether property conveyed under a mortgage which is not recorded as required by the statute may be regarded as a part of the general estate of an insolvent decedent, free from the lien of the mortgage or other conveyance, and distributable among the creditors generally.

On this question there is some difference of opinion among the courts,

(1) Some courts adhere to the view, directly or inferentially that the personal representative can not attack the validity of such unrecorded mortgage or conveyance, and that the property forming the subject thereof may not be regarded as a part of the insolvent estate for the benefit of all of the creditors; that as the mortgage was good as against the owner during his lifetime, it is good as against his personal representative, even though the estate be insolvent and the rule may work a hardship to the other creditors.

Another theory is that only creditors who have acquired a lien on the property before the recordation of the mortgage and not simple general creditors of the deceased, can attack the validity thereof; and the general creditors, who could not have taken an advantage of the failure to record during the lifetime of the mortgagor, can not do so merely because of the intervening death of the latter.

(2) On the other hand, other courts, constituting a majority, subscribe to the view, directly or inferentially, that the executor or the administrator of an insolvent estate, as the representative not only of the deceased but also of all of his creditors, may take advantage of the failure to record the mortgage, and apply the proceeds of the property conveyed thereby to the satisfaction of the general claims against the estate."

Among the states supporting the 1st proposition is Ohio, citing **Kilbourne v Fay, 29 Oh St 264.**

We, of course, are bound by the judgment in Kilbourne v Fay, and are of opinion that it must be given application in this case even though the plaintiff's decedent be chargeable with fraud in giving the mortgagee an improper statement as to her residence. The subject matter of the registry sections under which we are operating obviously was enacted for the benefit of creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith and was not intended to and did not in any wise affect the relationship between the immediate parties to the mortgage. The

effect of the statute can not be abrogated even though the mortgagor may be chargeable with fraud. The creditors should not be adversely affected and denied the benefit of the sections by any act of the mortgagor or mortgagee unless they could be chargeable witch laches or acts which would have the effect of stopping them. It is a maxim that equity follows the law and the express letter of a statute may not be circumvented by the application of the principle of equitable lien. 10 American Jur. 717, 21 C. J. 196.

We are satisfied that in Ohio where the estate is insolvent the administrator represents the general **Headnote 4.** creditors and in their behalf can in any appropriate proceeding attack the validity of a chattel mortgage as to the filing of which the statute has not been observed. **Kilbourne v Fay, Sweeny v Keystone Driller Co., 122 Oh St 16; Doyle, Receiver v The Yoho Hooker Youngstown Co., 130 Oh St 400; Re: K-T Sandwich Shoppe, 7 Abs 525; Angus, Receiver v Aetna Casualty and Surety Co., 11 Abs 31.**

The number of cases in Ohio treating the questions analogous to ours are so numerous that it would be impracticable to undertake to discuss them at length in this opinion. Many are cited in the brief of counsel for appellant.

There is, however, in this case one determinative factor in favor of the judgment, namely, the finding of the Probate Judge that the estate of plaintiff's decedent is solvent. This being true, the property which is covered by the mortgage will not be required to pay the debt of any creditor. It is not the obligation of the administrator to represent the ceditors to a degree beyond that which is necessary to assure the payment of their claims. After the debts are paid the remaining proceeds of the personal property will pass to the legal representatives of plaintiff's decedent and as the mortgage was valid as against the mortgagor it would likewise be effective against those who claim under the mortgagor. This proposition is discussed in the opinion in Kilbourne v Fay, supra, page 271, where it is said:

"It is true that in the case of a solvent estate the heir has also a beneficiary interest in the trust as distributee, but where the estate is insolvent, the interest of the heir is merely technical as all the assets in such case are administered for the exclusive benefit of the creditors."

It will be noted that in Kilbourne v Fay the Court had under consideration the effect upon the creditor of the mortgagor of the failure of the mortgagee to refile his mortgage, as provided by the statute, when the mortgagor died and left an **insolvent** estate. Both majority and minority opinions stress this fact.

In the instant case the administrator is a trustee for the benefit of creditors and distributees, 4 Oh St 354, 361; **Doney v Clark,** 55 Oh St 294. As representative of the creditors he may reach all personal property, the proceeds of which it is necessary to employ to pay their claims. The proceeds of the mortgaged property is not so required. As to it the administrator represents the distributees whose rights rise no higher than those of the mortgagor. **McCall, Admr. v Pixley, et, 48 Oh St 379.**

In all of the Ohio cases which we have examined the insolvency of the estate was conceded or determined as a prerequisite to the administrator challenging the validity of the mortgage. For instance in **Whitley v Weber, Admrx., 2 O. C. C. 336,** the Court considering the right of the administrator of the mortgagor to urge the invalidity of a chattel mortgage on behalf of the creditors of the estate said, "The only questions for our decision are, was this an insolvent estate", etc., page 337.

We are of opinion, therefore, that the judgment of the Probate Court must be affirmed upon the proposition that the estate is solvent and as to the personal property covered by the mortgage of the proceeds the right of the adminis-

trator to assert the invalidity of the mortgage rises no higher than the right of the mortgagor to question the mortgage during his lifetime.

The judgment will be affirmed.

GEIGER and BARNES, JJ., concur.